655 A.2d 40

**Shirley E. ROUSSOS**

v.

**ALLSTATE INSURANCE CO.**

**No. 993, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 6, 1995.

Shirley Ellen Roussos, Gaithersburg, for appellant.

D. Elizabeth Walker (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee.

Argued before MOYLAN, WENNER and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from an order of the Circuit Court for Montgomery County granting summary judgment in favor of appellee Allstate Insurance Co. (Allstate). The case arises out of an automobile accident involving appellant Shirley E. Roussos and Robert C. Baxley, Jr. As a result of the accident, Baxley filed a civil suit in the Circuit Court for Montgomery County alleging that he sustained personal injuries due to Roussos's negligence.

Roussos was insured by Allstate at the time of the accident. Pursuant to its insurance contract with Roussos, Allstate notified Roussos that it would provide her with a defense to the suit. Roussos disagreed with the way in which Allstate wanted to handle her defense and rejected an attorney provided by Allstate on the ground that her interests conflicted with those of Allstate. She requested that Allstate pay for an attorney of her choosing or let her control her defense. Allstate refused and repeatedly tried to convince Roussos to let it defend her. When Roussos remained resolute, Allstate filed an action for declaratory judgment, asking to be relieved of any liability under the contract in the event that Roussos did not prevail in Baxley's tort suit. Allstate subsequently moved for summary judgment, which was granted after a hearing.

Roussos appeals from the circuit court's grant of summary judgment and presents a number of questions for our review, which we condense and restate as follows:

I.  Did the lower court err in granting summary judgment in favor of Allstate, because the court incorrectly held that Roussos's actions relieved Allstate of liability under the insurance contract?

II. Did the lower court err in granting summary judgment in favor of Allstate, because the validity of the contract was a material fact in dispute?

## FACTS

On February 22, 1992, Roussos's automobile struck the rear of Baxley's vehicle. There were no witnesses to the accident. Within a few days, Roussos notified Allstate and provided it with an eight-page written statement documenting her version of the accident. Roussos contended that the incident was "a light bump," an "unavoidable, extremely light accident," resulting in no damage to herself or her automobile, and little, if any, damage to Baxley's car and no personal injury to Baxley. Baxley filed suit against Roussos, contending that he was "thrown about" within his car, sustaining severe and permanent injuries.

Roussos's insurance policy with Allstate provides, in pertinent part, as follows:

We [Allstate] will defend an insured person sued as the result of an **auto** accident, even if the suit is groundless or false. We will choose the counsel. We may settle any claim or suit if we believe it is proper....

. . . . .

When we ask, an insured person must cooperate with us in the investigation, settlement and defense of any claim or lawsuit....

Pursuant to its contract, Allstate advised Roussos that it would provide her with a defense to Baxley's suit, but stated that she must cooperate with Allstate. Allstate proposed that Roussos either settle with Baxley or stipulate to an amount of damages, but proceed to trial on the issue of liability. Roussos vehemently protested any negligence in the accident and did not want Allstate to pay Baxley anything. Despite Roussos's denial of liability and her assertion that Baxley's claims of injury were fraudulent, Allstate settled Baxley's property damage claim by paying him $967.

After Allstate was notified of Baxley's suit, Allstate hired an attorney to represent Roussos. The attorney informed Roussos that he was not affiliated with Allstate and that he would be representing her in the tort suit. Apparently under the belief that the attorney hired by Allstate would be acting in Allstate's best interests and not her own, Roussos rejected the attorney selected by Allstate and notified Allstate that she would be representing herself. She also insisted on having final settlement authority in the case. Roussos filed an answer to Baxley's complaint pro se.

Allstate filed an action for declaratory judgment, alleging that Roussos breached the insurance contract by refusing to allow counsel to be appointed for her, by refusing to allow Allstate to have settlement authority, and by refusing to cooperate with its defense of Baxley's suit. Allstate asked to be relieved of liability in the event that Roussos was found liable to Baxley. After the parties engaged in discovery, Allstate moved for summary judgment. The court concluded that Roussos's failure to cooperate relieved Allstate of its obligations under the contract. Determining that there were no genuine issues of material fact in dispute, the court granted summary judgment in favor of Allstate.[1] After her motion to reconsider was denied, Roussos noted the instant appeal.

## LEGAL ANALYSIS

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. MD. RULE 2–501. Our role is to determine whether the trial court was legally correct and whether a genuine dispute of material fact existed. *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993); *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 8, 327 A.2d 502 (1974). A disputed fact is material if its resolution would somehow affect the outcome of the case. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). In determin-

---

1. Roussos conducted her own defense in the tort suit against Baxley. The jury returned a verdict in favor of Baxley in the amount of $27,500.

ing whether a factual dispute exists, we review the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to appellant as the non-moving party. *Id.; Hrehorovich v. Harbor Hospital Cntr., Inc.*, 93 Md.App. 772, 790, 614 A.2d 1021 (1992), *cert. denied*, 330 Md. 319, 624 A.2d 490 (1993).

## I

■■■ A declaratory judgment action prior to the trial of a pending tort action is generally prohibited where the issues raised in the declaratory judgment proceeding would be fully decided in the underlying action. *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 253–54, 572 A.2d 154 (1990); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405–07, 347 A.2d 842 (1975). Where an insurance company claims lack of coverage due to the insured's failure to comply with a contract provision, such as a cooperation clause, however, a declaratory judgment action is "ordinarily . . . appropriate and should be granted." *Brohawn*, 276 Md. at 405, 347 A.2d 842. An insurer seeking to disclaim coverage because of an insured's breach of a cooperation clause must establish by a preponderance of the evidence that it was actually prejudiced. MD.ANN.CODE, art. 48A, § 482 (1994 Repl.Vol.).

For purposes of this discussion, we shall assume, without deciding, that Roussos's insurance contract with Allstate was a valid contract. An insurance contract, as with any contract, is interpreted according to the general rules of contract construction. *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135. Absent evidence that the parties intended a special or technical meaning, words are accorded their usual, ordinary, and accepted meanings. *Id.* at 766, 556 A.2d 1135.

■■■ Under the unambiguous terms of the policy, Allstate had the right to select counsel and to make any settlement decision that it deemed proper. Roussos had the obligation to

cooperate with Allstate in its representation of her.[2] When Roussos refused to allow Allstate's chosen attorney to represent her and to allow Allstate to negotiate a settlement with Baxley, she breached the contract. This breach infringed on Allstate's right to protect its significant financial interest in the outcome of Baxley's suit. *See Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 294–96, 482 A.2d 503 (1984), *cert. denied,* 302 Md. 289, 487 A.2d 292 (1985) (affirming trial court's determination that an insurer was prejudiced by being denied the rights "to investigate, evaluate coverage, choose defense counsel, and attempt to settle"). In addition, an adverse judgment was entered against Roussos. *See id.* at 296, 487 A.2d 292 ("[W]here the insurer has been deprived of all opportunity to defend, the mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer"). Under the express terms of the contract, it appears that Roussos's failure to cooperate entitled Allstate to seek declaratory judgment.

Roussos concedes that she did not accept Allstate's chosen attorney or agree to Allstate's representation of her. She claims, however, that there was a conflict of interest between herself and Allstate that did not require her to accept Allstate's attorney, but required it to fund an attorney of her choosing. An insurer has a duty to defend an insured for claims covered under the insurance policy. *Brohawn,* 276 Md. at 407, 347 A.2d 842. When a conflict of interest arises, the insurer is not relieved of this responsibility. The insurer must either provide an independent attorney to represent the insured or pay for the cost of defense incurred by the insured hiring an attorney of his or her choice. *Id.* at 411–12, 347 A.2d 842. The insured must be informed of the nature of the

---

2. Maryland courts have repeatedly upheld the enforceability of cooperation clauses in insurance contracts. *See, e.g., Travelers Ins. Co. v. Godsey,* 260 Md. 669, 273 A.2d 431 (1971); *Fidelity and Casualty Co. v. McConnaughy,* 228 Md. 1, 7, 179 A.2d 117 (1962); *Indemnity Ins. Co. v. Smith,* 197 Md. 160, 78 A.2d 461 (1951). *See also* ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW § 7.3(a), at 780 (1988); 8 JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4771, at 211 (1981).

conflict and given the right either to accept an independent attorney selected by the insurer or to select an attorney for himself or herself. *Id.* at 414–15, 347 A.2d 842.

Roussos alleges that her interests conflicted with Allstate's in essentially three respects. First, because the amount of her policy with Allstate was only $20,000 per person and Baxley's complaint alleged damages of $100,000, she was potentially liable for $80,000, whereas Allstate only had $20,-000 at stake.[3] Second, Roussos asserts that she and Allstate had a conflict of interest because they were adversaries in two proceedings before the insurance commission regarding the amount of coverage under her policy and a surcharge arising out of the accident with Baxley. The third, and primary, perceived conflict arises out of the manner in which Roussos was to be represented in Baxley's suit. Whereas Allstate apparently believed that Roussos was potentially liable and wanted to settle, Roussos wanted to maintain her clean driving record and did not want Allstate to pay Baxley anything.[4] Consequently, Roussos claimed that Allstate's desired handling of the suit conflicted with her objectives. In essence, Roussos claims that because of these three conflicts of interest, it was Allstate, not she, who breached the contract.

Under the terms of the insurance contract, Allstate had a duty to defend Roussos in Baxley's suit for negligence, a claim covered by her insurance policy. *See Brohawn,* 276 Md. at

---

3. In an order dated September 30, 1994, the insurance commissioner ruled that Allstate had presented insufficient evidence to justify denying Roussos coverage in its Standard Company at the level of coverage of $100,000/$300,000 for bodily injury per person/per incident. The commission ordered that, retroactive to November 26, 1991, Allstate must give Roussos the higher amount of coverage at the normal premiums and refund any excess premiums paid. We refer to the $20,000/$40,000 amount of coverage because that was the amount Allstate and Roussos believed was in effect at the time of the accident and during their subsequent negotiations.

4. As of May 1993, Roussos indicated that the only settlement that would have been acceptable to her would have been for Baxley to dismiss his suit with prejudice, admit that Roussos was not negligent, and agree to pay her $20,000 to compensate her for her time and expenses and another $20,000 as a penalty for filing the "frivolous suit" against her.

407, 347 A.2d 842. The question we must resolve is whether Roussos's perceived conflicts of interest were of the type that relieved Roussos of her duty to accept Allstate's attorney and entitled her to have Allstate pay for an attorney of her choice.

A common conflict of interest is where coverage is at issue; for example, where a plaintiff raises both covered and uncovered claims in a suit. *Allstate Ins. Co. v. Campbell,* 334 Md. 381, 395, 639 A.2d 652 (1994). Because it is in the insurer's interest to establish noncoverage and in the insured's interest to establish coverage, their interests are diametrically opposed and the insurer must allow the insured to choose independent counsel. *Id.; Brohawn,* 276 Md. at 414–15, 347 A.2d 842.

The Court of Appeals has also recognized the potential for a conflict of interest where a claim exceeds the amount of applicable insurance. *Campbell,* 334 Md. at 395–96, 639 A.2d 652. *See also* KEETON & WIDISS, § 7.6(a)(2)(v), at 815–16. The Court observed that, where liability is not an issue, the insured will wish to settle as soon as possible to avoid risking a judgment in excess of the policy limits, whereas the insurer, who risks only the amount of the policy, may wish to delay settlement in the hope of obtaining a more favorable settlement. *Campbell,* 334 Md. at 396, 639 A.2d 652. Although in such a situation, many insurers advise their insureds that it may be desirable for them to retain separate counsel for the amount of the excess, the "interests [of the insurer and the insured] are in no way adverse to the extent that exists where coverage is an issue." *Id.*

In the case *sub judice,* Allstate never claimed that Baxley's suit for negligence was not covered by its policy. To the contrary, it accepted the fact of coverage and attempted to defend Roussos by entering into negotiations with Baxley. Although the record does not reveal whether Allstate advised Roussos to obtain separate counsel for the amount of Baxley's

claim in excess of the policy amount of $20,000,[5] the fact that Baxley claimed an amount greater than the amount of the policy does not automatically make Roussos's and Allstate's interests adverse.

◼ Likewise, the fact that Roussos and Allstate were adversaries in other proceedings did not prevent them from aligning against Baxley in his tort suit. Roussos has not directed us to any authority, and our research has not revealed any, that requires an insurer to fund an attorney of the insured's choosing to defend a suit by a third party, merely because the insurer and the insured are engaged in an unrelated contract or fee dispute. We decline to extend an insurer's duty so far.

◼ Finally, the parties' disagreement as to the manner in which Roussos was to be represented does not present the type of conflict of interest that required Allstate to fund an attorney of Roussos's choosing. Roussos, believing herself to have been unjustly sued, did not want Baxley to receive any amount of money. Allstate, on the other hand, was willing to settle to minimize and expedite the litigation. Although these objectives are not identical, they are simply not adverse. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 31 (1986) (defining "adverse" as "acting against or in a contrary direction . . . HOSTILE, OPPOSED, ANTAGONISTIC . . . in opposition to one's interests"). Despite the fact that Allstate stated in a letter to Roussos that it believed her to be "legally liable" for Baxley's damages, each would have benefitted greatly if, at trial, Roussos were found not to have been negligent. An insurer's right to control the litigation against its insured is essential to protect the insurer's financial interest in the outcome of the suit. *See* 7C APPLEMAN, § 4681, at 3 (1979). We decline to extend an insurer's duty to provide independent counsel to a situation where the insured merely disagrees with the manner in which he or she is to be defended. *See Cardin v. Pacific*

---

5. Roussos claims that Allstate did not advise her to get separate counsel for the amount of the excess claim.

*Employers Ins. Co.*, 745 F.Supp. 330, 336–38 (D.Md.1990) (rejecting a per se rule that would require an insurer to pay for counsel selected by the insured where there is only the possibility that the insurer and the insured might have different objectives in regard to the suit being defended by the insurer-selected counsel).[6]

In sum, there was no conflict of interest between Roussos and Allstate that required it to fund an attorney of her choosing. Under the express terms of the contract, Roussos was required to cooperate with Allstate by letting it control her defense. Her failure to do so negated Allstate's obligations to pay for any judgment rendered against her. Assuming that the contract was valid, therefore, the trial court properly granted summary judgment in favor of Allstate.

## II

If her perceived conflicts of interest did not entitle her to an attorney of her choosing, Roussos claims, in the alternative, that no contract existed at all. She argues that the validity or existence of the contract, therefore, was a material fact in dispute that should have precluded summary judgment.

One of the essential elements in the formation of a contract is the parties' mutual assent to its terms. *Klein v. Weiss*, 284 Md. 36, 63, 395 A.2d 126 (1978). The failure to agree or even

---

6. *Cardin*, 745 F.Supp. 330, involved a civil suit that included claims both covered and uncovered by the insurance policy, as well as a related criminal investigation. Mr. Cardin's insurer provided him with independent counsel for the civil claims and instructed the attorney to defend Cardin on all civil claims and not to consider the insurer's interest in defending the case. Cardin retained his own counsel for both the civil and criminal actions, although he was fully satisfied with the counsel selected by his insurer.

The United States District Court for the District of Maryland stated that *Brohawn*, 276 Md. 396, 347 A.2d 842, did not entitle an insured to reject an insurer-selected counsel every time an insurer reserves its rights due to the presence of covered and uncovered claims. The court held that there must be an actual conflict of interest between the insurer and the insured in order to trigger the insurer's duty to pay for the insured's chosen counsel. *Id.* at 338, 347 A.2d 842.

to discuss an essential term is an indication that this element of mutual assent is lacking. *Id.* "[I]t must appear that the terms of the contract are in all respects definitely understood and agreed upon and that nothing is left for future settlement." *Peer v. First Fed. Sav. and Loan Ass'n,* 273 Md. 610, 614, 331 A.2d 299 (1975).

According to Roussos, she did not receive the entire policy until after her accident with Baxley. She merely filled out a form and agreed to a certain amount of coverage for a specific monthly premium. Although she received a binder, she claims that she never received the complete policy. She asserts that she never agreed to the specific terms that gave Allstate the rights to select an attorney and to settle, and that she would not have agreed to those terms, had she known of them.

Taking these allegations in the light most favorable to Roussos, there was a genuine dispute as to whether or not a valid contract existed. The existence of the contract, however, was not a material fact. As we indicated in Part I, *supra,* if the contract was valid, Allstate was relieved from liability by virtue of Roussos's failure to cooperate. If, on the other hand, there was no "meeting of the minds" between Allstate and Roussos and no contract existed, Allstate was never obligated to defend Roussos or to pay any amount on Roussos's behalf. Because the existence of the contract would not "somehow affect the outcome" of the case, it was not a material fact in dispute. In either case, Allstate was not liable for any judgment entered against Roussos. The trial court correctly granted summary judgment in favor of Allstate.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**