# 131 Nev., Advance Opinion 74
## IN THE SUPREME COURT OF THE STATE OF NEVADA

<table>
<tr><td>

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Appellant,
vs.
STEPHEN TANNER HANSEN,
Respondent.

</td><td>

No. 64484



SEP 24 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

</td></tr>
</table>

Certified questions under NRAP 5 regarding counsel in an insurance matter. United States District Court for the District of Nevada; Miranda M. Du, District Judge.

*Questions answered.*

Lewis Brisbois Bisgaard & Smith, LLP, and V. Andrew Cass and Jeffrey D. Olster, Las Vegas,
for Appellant.

Bowen Law Offices and Jerome R. Bowen and Sarah M. Banda, Las Vegas,
for Respondent.

Morales, Fierro & Reeves and Ramiro Morales, Las Vegas,
for Amici Curiae American Insurance Association, National Association of Mutual Insurance Companies, and Property Casualty Insurers Association of America.

Payne & Fears, LLP, and Gregory H. King and J. Kelby Van Patten, Las Vegas,
for Amici Curiae Centex Homes, Centex Real Estate Corporation, and Southern Nevada Home Builders Association.

BEFORE THE COURT EN BANC.[1]

[1]The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from the consideration of this matter.

2/8/16: Corrected per letter to publishers. CT          15-298066

## OPINION

By the Court, CHERRY, J.:

The Federal District Court for the District of Nevada certified two questions to this court concerning Nevada's conflict-of-interest rules in insurance litigation. The first question asks whether "Nevada law require[s] an insurer to provide independent counsel for its insured when a conflict of interest arises between the insurer and the insured." The second asks whether, if the first question is answered affirmatively, this court would "find that a reservation of rights letter creates a *per se* conflict of interest."

We conclude that Nevada law requires an insurer to provide independent counsel for its insured when a conflict of interest arises between the insurer and the insured. Nevada recognizes that the insurer and the insured are dual clients of insurer-appointed counsel. When the insured and the insurer have opposing legal interests, Nevada law requires insurers to fulfill their contractual duty to defend their insureds by allowing insureds to select their own independent counsel and paying for such representation. We further conclude that an insurer is only obligated to provide independent counsel when the insured's and the insurer's legal interests actually conflict. A reservation of rights letter does not create a per se conflict of interest.

### FACTS AND PROCEDURAL HISTORY

Our consideration of the facts in this case is limited to those in the certification order. *In re Fontainebleau Las Vegas Holdings*, 128 Nev., Adv. Op. 53, 289 P.3d 1199, 1207 (2012). In this case, the federal district court's November 19, 2013, certification order incorporated by reference the facts set forth in its December 12, 2012, order.

 

While leaving a house party, Stephen Hansen was injured in an altercation with other guests. The other party guests tried to prevent Hansen and his friends from leaving the party by sitting on or standing around their vehicle. Eventually Hansen and his friends were able to leave the party in their vehicle, but they later had to stop at the gated exit of the residential subdivision. While stopped at the gate, the vehicle of another party guest, Brad Aguilar, struck the vehicle in which Hansen was riding. Hansen filed a complaint against Aguilar and others in Nevada state district court alleging both negligence and various intentional torts.

Aguilar was insured by State Farm Mutual Automobile Insurance Company.[2] State Farm agreed to defend Aguilar under a reservation of rights. The reservation of rights letter reserved the right to deny coverage for liability resulting from intentional acts and punitive damages.

Aguilar admitted to negligently striking the other vehicle, and the district court granted summary judgment in favor of Hansen on the negligence claim. Aguilar then agreed to a settlement with Hansen, in which he assigned his rights against State Farm to Hansen.

Hansen filed this lawsuit in the United States District Court for the District of Nevada, alleging that State Farm, in its representation

---

[2]Aguilar was also insured, through his parents' homeowners' insurance, by State Farm Fire and Casualty Company. Whether State Farm Fire's coverage applies appears to be at issue in the federal district court. However, because the distinction is irrelevant to the issues now before us, we will not distinguish between State Farm Auto and State Farm Fire.

SUPREME COURT
OF
NEVADA

(O) 1947A

of Aguilar, breached a contract, contractually or tortiously breached an implied covenant of good faith and fair dealing, and violated the Nevada Unfair Claims Practices Act. Hansen also asked for declaratory relief based on the stipulated judgments and assignment of rights. State Farm moved for summary judgment, arguing that Aguilar's assignment of rights to Hansen was void because it violated Aguilar's insurance contract. Hansen responded that, even if Aguilar violated the insurance contract, State Farm's prior breach terminated Aguilar's obligations under the contract.

The federal district court found that State Farm breached its contractual duty to defend Aguilar because it did not provide Aguilar with independent counsel of his choosing. The court said that State Farm's interests conflicted with Aguilar's interests because the insurance policy only covered Aguilar if he acted negligently; the policy did not cover intentional tortious acts. The court therefore applied the rule from *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.*, 208 Cal. Rptr. 494, 506 (Ct. App. 1984), *superseded by statute as stated in United Enters., Inc. v. Superior Court*, 108 Cal. Rptr. 3d 25 (Ct. App. 2010), which states that an insurance company must provide independent counsel if its interests conflict with the insured's. Because State Farm did not comply with the *Cumis* rule, the district court found that State Farm violated its contractual duty to defend Aguilar.

State Farm moved for reconsideration. The federal district court granted, in part, State Farm's motion and certified these questions to this court. We accepted the certified questions under NRAP 5 because they present issues of first impression in Nevada.

## DISCUSSION

*The right to insurer-provided independent counsel*

RPC 1.7(a) states the general rule that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." But when an insurer provides counsel to defend its insured, a conflict of interest may arise because the outcome of litigation may also decide the outcome of a coverage determination—a determination that may pit the insured's interests against the insurer's. For example, an insurer will want the litigation outcome to determine coverage in a way favorable to the insurer, such as by deciding that the insured's acts were intentional and therefore not covered. Conversely, the insured will want to be found negligent so that the insurer will pay his liabilities. By reserving the right to determine coverage *after* litigation, the insurer hopes that the litigation outcome effectively determines coverage on its behalf and in its favor. The insurer-provided lawyer will have a relationship with both the insured and the insurer, who each have legal interests opposing the other.

The *Cumis* rule says that, in order to avoid a conflict of interest resulting when an insurer reserves its rights to determine coverage, an insurer must satisfy its contractual duty to provide counsel by paying for counsel of the insured's choosing. *Cumis*, 208 Cal. Rptr. at 506. The issue here is whether the *Cumis* rule, or some alternative, applies in Nevada.

Courts rejecting the *Cumis* rule have not recognized the existence of a conflict of interest in such cases. These courts have reasoned that the sole client is the insured and, therefore, counsel only

owes a duty to the insured. *See Finley v. Home Ins. Co.*, 975 P.2d 1145, 1152-53 (Haw. 1998).[3] True, some courts have mentioned other rationales, such as that professional ethics rules will keep counsel honest and that insureds have other remedies against unethical counsel. *See id.* But the main rationale is still that there is no conflict: The sole client is the insured, not the insurer. *See id.* at 1153.

Nevada, in contrast, is a dual-representation state: Insurer-appointed counsel represents both the insurer and the insured. *See Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Court*, 123 Nev. 44, 52, 152 P.3d 737, 742 (2007). In *Nevada Yellow Cab*, this court explicitly adopted the rule of dual representation, which is the same rule applied by the California courts and addressed in *Cumis*. *See id.* at 51-52, 152 P.3d at 741-42 (citing *Unigard Ins. Grp. v. O'Flaherty & Belgum*, 45 Cal. Rptr. 2d

---

[3]*See also L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303-04 (Ala. 1987) (adopting the Washington Supreme Court's approach requiring that counsel hired by the insurer understand that only the insured is a client); *Higgins v. Karp*, 687 A.2d 539, 543 (Conn. 1997) ("[A]n attorney's allegiance is to his client, not to the person who happens to be paying for his services. . . . Thus, even when an attorney is compensated . . . by a liability insurer, his or her duty of loyalty and representation nonetheless remains exclusively with the insured." (internal quotations omitted)); *In re Youngblood*, 895 S.W.2d 322, 328 (Tenn. 1995) ("The employment of an attorney by an insurer to represent the insured does not create the relationship of attorney-client . . . . Where the employer is not also a client, a conflict will not occur . . . ."); *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1137 (Wash. 1986) ("[Washington Rule of Professional Conduct] 5.4(c) demands that counsel understand that he or she represents only the *insured*, not the company."). *But see Norman v. Ins. Co. of N. Am.*, 239 S.E.2d 902, 907 (Va. 1978) (addressing conflict of interest question without first discussing whether insurer is a client).

565, 568-69 (Ct. App. 1995)); *Cumis*, 208 Cal. Rptr. at 498. We held that an attorney-client relationship exists between insurer-appointed counsel and the insurer. *Nev. Yellow Cab*, 123 Nev. at 52, 152 P.3d at 742.

Because Nevada is a dual-representation state, counsel may not represent both the insurer and the insured when their interests conflict and no special exception applies. RPC 1.7. This suggests that the *Cumis* rule, where the insurer must satisfy its contractual duty to provide counsel by paying for counsel of the insured's choosing, is appropriate for Nevada.

Amici curiae American Insurance Association, the National Association of Mutual Insurance Companies, and Property Casualty Insurers Association of America suggest two alternative approaches that are supposedly consistent with Nevada's rule of dual representation.[4] First, they suggest the primary-client model, where representation switches from dual-client to single-client (the insured, primary client) as soon as a conflict arises. But RPC 1.9(a) prohibits "[a] lawyer who has formerly represented a client in a matter" from representing a client "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Therefore, the primary client model appears to be unworkable in a dual-representation jurisdiction.

---

[4]This court has also granted Centex Homes, Centex Real Estate Corporation, and Southern Nevada Home Builders Association's motion for leave to file an amicus brief.

As a second alternative, amici suggest the contract model, where amici argue that no conflict of interest exists when an insurer selects an insured's counsel and contractually instructs counsel that only the insured is a client. But this may not eliminate the lawyer's conflict of interest because the lawyer is selected by and receives compensation from someone with legal interests opposed to the lawyer's client. This approach may violate the spirit of RPC 1.8(f), which says that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless . . . [t]here is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship." When counsel is both selected and paid by a third party with legal interests directly opposed to the client's, there is a legitimate question whether counsel can be truly independent.[5] For instance, the attorney might have an incentive to act favorably toward the insurer in order to garner future business.

In sum, Nevada, like California, recognizes that the insurer and the insured are dual clients of insurer-appointed counsel. Where the clients' interests conflict, the rules of professional conduct prevent the same lawyer from representing both clients. California's *Cumis* rule is well-adapted to this scenario. It requires insurers to fulfill their duty to

---

[5]We reject amici's argument that insurers can avoid a conflict of interest by contractually instructing counsel that they only represent the insured. That said, we do not hold that a per se conflict exists every time that an insurer selects and pays for counsel to represent the insured, even when the insured consents to such representation. Because this case does not involve informed consent under RPC 1.7(b) or RPC 1.8(f), we decline to consider that issue.

Supreme Court
of
Nevada

(O) 1947A

8

defend by allowing insureds to select their own counsel and paying the reasonable costs for the independent counsel's representation. *Cumis Ins. Society, Inc.*, 208 Cal. Rptr. 494, 506. We find this approach more workable than the alternatives presented by amici. Therefore, we answer the first certified question in the affirmative: When a conflict of interest exists between an insurer and its insured, Nevada law requires the insurer to satisfy its contractual duty to provide representation by permitting the insured to select independent counsel and by paying the reasonable costs of such counsel.[6]

*The effect of a reservation of rights*

Jurisdictions are divided on whether a reservation of rights creates a per se conflict of interest. Some jurisdictions apply a per se rule that a reservation of rights creates a conflict of interest between the insured and insurer-appointed counsel. *See Patrons Oxford Ins. Co. v. Harris*, 905 A.2d 819, 825-26 (Me. 2006).[7] Courts in these jurisdictions

---

[6]Although our holding applies to an insurer's contractual duty to defend its insured, we note that it is the duty of Nevada attorneys not to undertake the representation of clients with opposing interests. *See* RPC 1.7. And "[w]hen a lawyer's responsibilities to a third party may impair the representation of a client, the lawyer must decline or withdraw from the representation." *Duval Ranching Co. v. Glickman*, 930 F. Supp. 469, 473 (D. Nev. 1996). "The representation of clients with conflicting interests and without informed consent is a particularly egregious ethical violation that may be a proper basis for complete denial of fees." *Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012).

[7]*See also* Alaska Stat. Ann. § 21.96.100(c) (West 2014) ("[I]f the insurer reserves the insurer's rights on an issue for which coverage is denied, the insurer shall provide independent counsel . . . ."); *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co.*, 178 P.3d 485, 491 (Ariz. Ct. App. 2008) ("When an insurer reserves its rights to contest

*continued on next page . . .*

have reasoned that, if an insurer could control the case under a reservation of rights, it could insist on full litigation. The insurer would thereby expose the insured to the risk of personal liability and then seek to deny coverage if the verdict is unfavorable to the insured. *See id.* at 826. Courts see it as unfair to give insurers an opportunity for a second bite of the apple. *See id.*

Other jurisdictions look to the facts of the case to determine whether there is an actual conflict.[8] Courts in these jurisdictions stress that the point of the *Cumis* rule is to enforce conflict-of-interest rules, so

---

*. . . continued*

indemnification liability, however, a conflict of interest is created between the insurer and the insured."); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788 N.E.2d 522, 539 (Mass. 2003) ("When an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs.").

[8]*See Travelers Prop. v. Centex Homes*, No. C 10-02757 CRB, 2011 WL 1225982, at *8 (N.D. Cal. Apr. 1, 2011) (applying Cal. Civ. Code § 2860(b) to determine whether conflict existed); *Cardin v. Pac. Emp'rs Ins. Co.*, 745 F. Supp. 330, 336 (D. Md. 1990) ("[T]he [Maryland] Court [of Appeals] did not hold . . . that in every circumstance where a reservation of rights is made due to the presence of covered and uncovered claims a conflict is created."); *Mut. Serv. Cas. Ins. Co. v. Luetmer*, 474 N.W.2d 365, 368 (Minn. Ct. App. 1991) ("[B]efore an insured will be entitled to counsel of its own choice, an actual conflict of interest, rather than an appearance of a conflict of interest, must be established."); *Nisson v. Am. Home Assurance Co.*, 917 P.2d 488, 490 (Okla. Civ. App. 1996) ("[N]ot every perceived or potential conflict of interest automatically gives rise to a duty on the part of the insurer to pay for the insured's choice of independent counsel.").

SUPREME COURT
OF
NEVADA

(O) 1947A

the focus should be on whether there is actually a conflict. *See, e.g., Fed. Ins. Co. v. MBL, Inc.*, 160 Cal. Rptr. 3d 910, 920 (Ct. App. 2013). Courts must therefore consider whether a conflict of interest exists and not simply look for a reservation of rights. *See id.*

For example, in California, the codified *Cumis* rule requires an actual conflict of interest; it does not apply to every case in which there is a reservation of rights. "[W]hen an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest *may* exist." Cal. Civ. Code § 2860(b) (West 2014) (emphasis added). There are two elements: (1) a reservation of rights *and* (2) that the outcome of the coverage determination can be controlled by counsel in the underlying defense of the claim. *See id.*; *Travelers Prop. v. Centex Homes*, No. C 10-02757 CRB, 2011 WL 1225982, at *8 (N.D. Cal. Apr. 1, 2011) (applying Cal. Civ. Code § 2860(b) to determine whether conflict existed). But even after laying out those two elements, the statute uses the word "may," implying that it is still an issue of fact whether a conflict of interest actually exists.

What, then, is the standard that a trial court must apply when looking at whether the facts of the case create a conflict of interest? In California, courts apply the rules of ethics: "[T]he *Cumis* rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests. For independent counsel to be required, the conflict of interest must be significant, not merely theoretical, actual, not merely potential." *MBL*, 160 Cal. Rptr. 3d at 920 (internal quotations omitted). Therefore, even when (1) there is a reservation of rights and (2) insurer-provided counsel has control over an issue in the case that will

also decide the coverage issue, courts must still determine whether there is an actual conflict of interest. This means that there is no conflict if the reservation of rights is based on coverage issues that are only extrinsic or ancillary to the issues actually litigated in the underlying action. *See id.*

We conclude that the California approach, that a reservation of rights does not create a per se conflict, is most compatible with Nevada law. Courts must inquire, on a case-by-case basis, whether there is an actual conflict of interest. This approach follows Nevada law: We have held that dual-representation is appropriate as long as there is "no actual conflict." *See Nev. Yellow Cab*, 123 Nev. at 51, 152 P.3d at 741. And we have approvingly cited opinions holding that "joint representation is permissible as long as any conflict remains speculative." *Id.* Moreover, because the *Cumis* rule derives from rules of professional conduct, *see MBL*, 160 Cal. Rptr. 3d at 920, it follows that the appropriate standard is whether there is an actual conflict under RPC 1.7. Therefore, an insurer is obligated to provide independent counsel of the insured's choosing only when an actual conflict of interest exists. A reservation of rights does not create a per se conflict of interest.

_____, J.
Cherry

We concur:

_____, C.J.
Hardesty

_____, J.
Saitta

_____, J.
Pickering

_____, J.
Douglas

_____, J.
Gibbons